

# NUMBER 13-17-00217-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JESUS F. VELA,          Appellant,

v.

KATHLEEN MAE VELA,          Appellee.

### On appeal from the County Court at Law No. 2
### of Williamson County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Yañez[1]
### Memorandum Opinion by Justice Yañez

Appellant Jesus F. Vela appeals the trial court's nunc pro tunc judgment in favor

---

[1] Retired Thirteenth Court of Appeals Justice Linda Yañez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (West, Westlaw through 2017 1st C.S.).

of appellee Kathleen M. Vela.[2]  By two issues, that we construe as three, Jesus contends that the trial court did not correct a clerical error, the final divorce decree is unambiguous, and the qualified domestic relations order ("QDRO") is void.[3]  We affirm.

## I.  BACKGROUND

In 2010, the divorce court[4] rendered and signed a final divorce decree dissolving the marriage of Kathleen and Jesus.  Kathleen's divorce attorney signed the final divorce decree approved as to form only, while Kathleen and Jesus signed it, approving and consenting to both form and substance.  On the same date that the divorce court signed the final divorce decree, it signed a separate document—the QDRO—awarding 35% of Jesus's retirement pay from the United States Army to Kathleen.  Although the parties and Kathleen's divorce attorney also signed the QDRO, the divorce decree failed to award Kathleen 35% of Jesus's retirement pay.

On October 15, 2015, Jesus filed a petition in the trial court to amend or correct the QDRO claiming that the QDRO was void as it constituted an impermissible modification, alteration, and change of the division of the property awarded in the divorce decree.  Jesus asked the trial court to amend and/or correct the QDRO to comport with the divorce decree.  Kathleen filed a general denial and a motion for judgment nunc pro tunc stating that the divorce decree contained a clerical error because it failed to award

---

[2]  This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas.  See TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).  Because this is a transfer case, we apply the precedent of the Third Court of Appeals to the extent it differs from our own.  See TEX. R. APP. P. 41.3.

[3] See TEX. FAM. CODE ANN. § 9.101 (West, Westlaw through 2017 1st C.S.) (conferring exclusive jurisdiction to the trial court that renders a final divorce decree "to render an enforceable [QDRO] . . . permitting payment of," among other things, a retirement plan to an alternate payee).

[4] For ease of reading, we refer to the "divorce court" when discussing the proceedings concerning the divorce decree, and we refer to the "trial court" when discussing the nunc pro tunc proceedings.

Kathleen 35% of Jesus's military retirement benefits, although all parties and the divorce court also signed the QDRO.[5]

The trial court held a hearing on March 2, 2016, where Kathleen argued, among other things, that the divorce court made a clerical error in the divorce decree and that the divorce decree was ambiguous. Jesus argued that the divorce court lacked subject-matter jurisdiction to modify the divorce decree with the QDRO and that the error was a judicial error.

The trial court determined that the divorce decree was unambiguous and contained no clerical error and upheld the terms of the divorce decree excluding the award of Jesus's retirement benefits to Kathleen. Kathleen requested a rehearing of this ruling. A rehearing was held wherein Kathleen re-urged her arguments. Jesus argued that the divorce court lacked jurisdiction to modify, alter, or change the division as set out in the divorce decree. At the rehearing, the trial court found that an ambiguity existed "as a result of the clerical error." The trial court signed a judgment nunc pro tunc amending the divorce decree awarding Kathleen 35% of Jesus's military retirement income.[6] This appeal followed.

## II.    APPLICABLE LAW AND STANDARD OF REVIEW

A judgment is rendered when the trial court's decision is officially announced, either orally in open court or by written memorandum filed with the clerk. *In Interest of M.D.G.*, 527 S.W.3d 299, 306 (Tex. App.—El Paso 2017, no pet.) (citing *Comet Aluminum*

---

[5] Kathleen's divorce attorney did not represent her in these proceedings. However, Kathleen's divorce attorney testified at the nunc pro tunc hearing.

[6] The judge who originally denied Kathleen's motion for judgment nunc pro tunc was not presiding in the trial court for the rehearing, and a different judge presided over the rehearing and granted her motion.

*Co. v. Dibrell*, 450 S.W.2d 56, 58–59 (Tex. 1970)). A trial court has plenary power to correct judicial errors in a judgment within thirty days after the judgment is signed. *Id.* Once the trial court's plenary power expires, it may only correct clerical errors by judgment nunc pro tunc. *B.Z.B., Inc. v. Clark*, 273 S.W.3d 899, 903 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "To be clerical in nature, the error must be one that is not the result of judicial reasoning, evidence, or determination." *Id.* Judicial as opposed to clerical errors occur in the rendering rather than the entering of a judgment. *Id.*; *see Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. 1980) ("The purpose of a nunc pro tunc order is to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not entered of record at the proper time."). Whether error in the original judgment is judicial or clerical is a question of law. *Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986); *Tex. Dep't of Pub. Safety v. Moore*, 51 S.W.3d 355, 358 (Tex. App.—Tyler 2001, no pet.); *Seago v. Bell*, 764 S.W.2d 362, 363–64 (Tex. App.—San Antonio 1989, writ. denied) (citing *Finlay v. Jones*, 435 S.W.2d 136, 138 (Tex. 1968) (stating that the trial court's finding or conclusion as to the nature of the error is not binding on the appellate court)).

However, whether the trial court's finding that the court rendered a different judgment than entered is a question of fact. *Escobar*, 711 S.W.2d at 232. "The judicial or clerical question becomes a question of law only after the trial court factually determines whether it previously rendered judgment and the judgment's contents." *Id*. Thus, before we may determine whether the error corrected by the trial court in this case was judicial or clerical, we must first determine whether there is some probative evidence supporting a finding that the divorce court previously rendered judgment awarding

4

Kathleen a portion of Jesus's retirement benefits. *See id*. "Evidence of the judgment actually rendered may come from witness testimony, docket entries, or the trial judge's personal recollection." *In re M & O Homebuilders, Inc.*, 516 S.W.3d 101, 110 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Escobar*, 711 S.W.2d at 231).

## III.   CLERICAL VERSUS JUDICIAL ERROR

By his first issue, Jesus contends that the trial court corrected a judicial as opposed to clerical error; thus, the trial court erred in granting Kathleen's motion for judgment nunc pro tunc. Kathleen responds that the divorce decree inaccurately reflected the true decision of the divorce court; thus, the error resulted from an inadvertent clerical error which was properly corrected by a judgment nunc pro tunc.

At the rehearing, Kathleen presented evidence that, before the divorce court signed the divorce decree and QDRO, both Kathleen and Jesus agreed that Kathleen would receive a portion of Jesus's retirement benefits and that the divorce decree would be written in accordance with their agreement. The evidence showed that after several negotiations, Jesus finally agreed that Kathleen would receive 35% of his retirement benefits. Jesus testified that he believed that Kathleen would receive some portion of his retirement benefits. Jesus agreed that he signed the QDRO. Evidence was presented that Kathleen submitted the QDRO to Jesus's employer and that she began receiving payments for her portion of Jesus's retirement benefits on July 1, 2015. Jesus challenged the QDRO in October of 2015.

Kathleen's divorce attorney testified that she has never drafted a QDRO in a case where retirement benefits were not being divided. She explained that "QDRO's are difficult to draft." In addition, the evidence before the trial court showed that Kathleen paid

5

$350 to her divorce attorney to draft the QDRO. Kathleen's divorce attorney testified that the failure of the divorce decree to divide the military retirement benefits according to the QDRO was a clerical error on her part and that the documents were signed by the divorce court at the same time and "entered" at the same time.

Finally, the divorce court's docket sheet entries show that the divorce court signed the divorce decree contemporaneous with signing the QDRO. The divorce court noted on the docket sheet that it had signed, among other things, the final "agreed" decree of divorce and QDRO "following testimony of [Kathleen]."

We conclude that there is some probative evidence in the record supporting a factual finding that the divorce court rendered judgment that Kathleen receive 35% of Jesus's retirement benefits and that the divorce decree as entered does not clearly reflect the judgment as rendered. Next, we must decide as a matter of law, whether the error in the judgment was judicial or clerical. "In doing so, we must look only to the judgment that was actually rendered." *Gray v. Turner*, 807 S.W.2d 818, 823 (Tex. App.—Amarillo 1991, no pet.) (citing *Coleman v. Zapp*, 151 S.W. 1040, 1041 (Tex.)). Here, the rendered and intended judgment over the entire proceeding was that Kathleen be awarded 35% of Jesus's retirement benefits. By correcting the error, the trial court did not have to re-adjudicate, rewrite, or change the decretal portion of the divorce decree that was rendered. *See id*. The trial court was not required to engage in judicial reasoning or determination to correct the error in the divorce decree. *See id*. The trial court merely properly recorded in its nunc pro tunc judgment the decision which had previously been reached and rendered. *See id*. "Thus, 'the signed [divorce decree] inaccurately reflects

6

the true decision of the [divorce] court,' and the error was properly corrected" by the nunc pro tunc judgment. *See id*. Accordingly, we overrule Jesus's first issue.[7]

## V. CONCLUSION

We affirm the trial court's judgment.

LINDA YAÑEZ,
Justice

Delivered and filed the
28th day of March, 2019.

---

[7] As we have concluded that the trial court properly corrected a clerical error, we need not address Jesus's second issue that the trial court improperly entered the nunc pro tunc judgment because there was no ambiguity in the divorce decree as it is not dispositive of this appeal. *See* TEX. R. APP. P. 47.1. In addition, because the trial court properly found that the divorce court rendered a judgment awarding Kathleen a portion of Jesus's retirement benefits, the QDRO is not void as it was authorized by the judgment rendered. *See* TEX. FAM. CODE ANN. § 9.101.